IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
FEB - 5 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Yazan Farouk Rousan, )
    Plaintiff, )
)
v. ) 1:12cv595 (LMB/TRJ)
)
Officer Custer, et al., )
    Defendants. )

### MEMORANDUM OPINION

Yazan Farouk Rousan, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that defendants were deliberately indifferent to his serious medical needs and were negligent in failing to provide him medical care. Defendants Bornell and Carty filed a joint Motion for Summary Judgment on December 13, 2012, and Officer Custer filed a separate Motion for Summary Judgment on December 14, 2012. All parties informed plaintiff that he had twenty-one (21) days to respond per Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff has responded to both motions. Accordingly, this matter is now ripe for disposition.

### I. Background

The undisputed facts are as follow:

In the early morning of December 1, 2011, Officer Custer, a police officer with the Fairfax County, Virginia Police Department, arrested plaintiff for an outstanding probation violation and for possession of crack cocaine. Am. Compl. ¶ 18, ECF No. 13; Custer Mem. Supp. Mot. Summ. J. [hereinafter Custer Mem.] ¶¶ 3, 6, 9, ECF No. 74. Officer Custer applied handcuffs to plaintiff's wrists and placed plaintiff in the back seat of the police car. Am. Compl. ¶¶ 18, 19; Custer Mem. ¶¶ 10, 13. Officer Custer did not fasten plaintiff's seatbelt. Am. Compl.

¶ 21; Custer Mem. ¶ 14. At 12:50 a.m., Officer Custer began transporting plaintiff to the Fairfax County Adult Detention Center ("ADC"), where they arrived at 1:04 a.m.[1] Am. Compl. ¶ 34; Custer Mem. ¶¶ 16, 23.

After entering the facility, deputies searched plaintiff, and Deputy Carty asked plaintiff a series of routine questions, including whether plaintiff had any medical complaints. Am. Compl. ¶ 40; Custer Mem. ¶ 29. Plaintiff informed Deputy Carty that he "was experiencing pain in his shoulder and neck and was worried because he had spinal surgery fusing C6 and C7." Am. Compl. ¶ 40; Carty Aff. ¶ 4, ECF No. 70-8. Shortly after, Officer Custer left and had no further contact with plaintiff. Am. Compl. ¶ 46; Custer Mem. ¶ 32.

After plaintiff was photographed and fingerprinted, Nurse Bornell conducted an initial medical screening of plaintiff. Am. Compl. ¶ 48; Mem. Supp. Carty & Bornell Mot. Summ. J. [hereinafter Carty Mem.] ¶ 10. When Nurse Bornell asked plaintiff why his blood pressure was so high, plaintiff replied that he had been drinking and smoking crack cocaine and that he had been in an accident in the police car on the way to ADC. Am. Compl. 48; Carty Mem. ¶ 12.

Following the medical screen, plaintiff spent the next day and half in a holding area awaiting classification until he was released into the general population. Am. Compl. ¶¶ 53, 55; Custer Mem. ¶¶ 37. 38. Between December 5 and 16, 2011, plaintiff submitted seven inmate request forms on which he complained about his medical treatment or requested a grievance form to do the same. Exs. 1–7, Am. Compl. Medical staff periodically checked plaintiff's blood pressure, Am. Compl. ¶ 56, and on December 15, 2011, a nurse took x-rays of plaintiff's neck. Am. Compl. ¶¶ 59, 60; Carty Mem. ¶ 18a. A physician determined that they showed a curvature

---

[1] As will be seen, what happened during the car journey is in dispute, but the dispute is not material to the issue of Officer Custer's liability.

of plaintiff's spine in the cervical region. Am. Compl. ¶ 68; Carty Mem. ¶ 19. The physician ordered a comprehensive x-ray and an electromyogram (EMG).

Between December 15, 2011—two weeks after his arrival at ADC—and February 27, 2012, plaintiff received medical treatment to treat symptoms and to determine the nature of his spinal condition on at least four separate occasions. Am. Compl. ¶¶ 60–71; Carty Mem. ¶ 18. After being referred to an orthopaedic specialist, plaintiff had an EMG and was diagnosed with cervical and trapezial strain on March 21, 2012. Carty Mem. Ex. 7, ECF No. 70-9. For treatment, his physician recommended physical therapy sessions and over-the-counter pain medication. Id. Plaintiff began physical therapy on April 4, 2012. Am. Compl. ¶ 79.

Plaintiff alleges that Officer Custer, Deputy Carty, and Nurse Bornell were deliberately indifferent to his serious medical needs because they did not treat adequately the injuries he sustained during transportation to ADC, and that Officer Custer was negligent for failing to protect plaintiff from harm during while transporting him to ADC. .Id. ¶¶ 84–94. As relief, he seeks monetary damages and injunctive relief in the form of medical treatment. Id. 21–22.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter

of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

A. Deliberate Indifference claim

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir.

4

1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

Plaintiff also appears to allege that defendants deliberately delayed his treatment. Delay in providing an inmate with medically necessary surgery can amount to deliberate indifference. Webb v. Driver, 313 Fed. App'x 591 (4th Cir. 2008). However, an inadvertent failure to provide adequate medical care does not constitute an "unnecessary and wanton infliction of pain" and is not "repugnant to the conscience of mankind," and so does not amount to a violation of the Eighth Amendment, which instead requires a showing that the indifference was sufficiently egregious to offend "evolving standards of decency." Estelle, 429 U.S. at 105–06.

Assuming arguendo that plaintiff's injuries were sufficiently serious to warrant constitutional protection, defendants were not deliberately indifferent to plaintiff's medical needs and did not deliberately delay his treatment.

1. Officer Custer

Plaintiff alleges that Officer Custer, while transporting plaintiff to ADC, made a sharp turn that caused plaintiff to "roll over . . . onto his back and slam[] the back of his head against the rear door on [the] drivers [sic] side." Am. Compl. ¶¶ 24, 25. He alleges that he then told Officer Custer that he was injured, id. ¶ 27, 28, and that Officer Custer should have immediately

5

taken him to a hospital, id. ¶ 34. Plaintiff further alleges that he informed Deputy Carty during the booking process at ADC that he had been in an accident and that in response, Officer Custer said, "[h]e was tossed around the backseat, he'll be alright." Id. ¶¶ 40, 41.

Contrary to plaintiff's allegations, Officer Custer states in a sworn affidavit that "[a]t no time during the 14 minutes transport from the Days Inn to the ADC, did Rousan exhibit any signs of apparent distress or pain, nor did he have any cuts, bruises, or bleeding." Custer Aff. ¶ 28, ECF No. 74-1. Officer Custer also states that plaintiff "never made any statements regarding any alleged injuries, and he never requested medical attention or treatment." Id. ¶ 33. Officer Custer states that upon arriving at ADC, plaintiff had "no obvious signs of injury[,]" id. ¶ 32, and that he "was able to get out of the car on his own and had no trouble doing so. . . . At all times, Rousan was able to walk on his own." Id. ¶ 31. Finally, Officer Custer states that plaintiff did not request medical attention when they arrived at ADC. Id. ¶ 35.

Officer Custer can have no liability for plaintiff's claim of denial of medical care. In this circuit, it is settled that "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Anemone, 926 F. Supp. 69, 73 (W.D. Va. 1996), citing Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, accepting as true for purposes of this analysis plaintiff's statement that he was tossed around in the back seat of the police cruiser, Office Custer can have no liability for denying plaintiff medical care for his alleged injuries.

To the extent that plaintiff alleges that Officer Custer deliberately delayed plaintiff's treatment, plaintiff's allegations are unfounded. As Officer Custer points out, he transported plaintiff to ADC, where twenty-four hour medical care is available and where plaintiff was

6

medically screened within minutes of their arrival. Therefore, Officer Custer's Motion for Summary Judgment on plaintiff's claim of deliberate indifference to serious medical needs will be granted.

2. Deputy Carty

Deputy Carty and Bornell's Motion for Summary Judgment will be granted. As to Deputy Carty, taking plaintiff's allegations as true that he informed Deputy Carty of his medical condition, Deputy Carty states in a sworn affidavit that plaintiff "did not have any visible injuries at the time." Carty Aff. ¶ 6. Most importantly, she states that she has "no medical training beyond first-responder training" and that she "knew that Mr. Rousan would be examined by an intake nurse after seeing me." Id. ¶¶ 9, 10. Moreover, as Deputy Carty points out, plaintiff fails to identify any action that Deputy Carty took that interfered with plaintiff's efforts to receive medical care. Carty & Bornell Reply to Pl.'s Resp. to Summ. J. Mot. ¶ 5, ECF No. 82. Deputy Carty's actions thus were not incompetent or inadequate and do not "shock the conscious" or offend "standards of decency," and she is entitled to summary relief on plaintiff's claim that Deputy Carty was deliberately indifferent to plaintiff's serious medical needs or that she interfered with plaintiff's attempts to receive medical care.

3. Nurse Bornell

As to Nurse Bornell, taking plaintiff's allegations as true that he informed her of his injuries, he still cannot recover against her for deliberate indifference to serious medical needs. Nurse Bornell conducted an initial medical screen of plaintiff and states in a sworn affidavit that she "did not interfere with any person's efforts to provide [him] with medical treatment." Bornell Aff. ¶ 9, ECF No. 70-8. Plaintiff received extensive medical care following his arrival at

7

ADC. After getting x-rays and an EMG, he was referred to a specialist, diagnosed, and given treatment in the form of physical therapy.

All three defendants state that they did not interfere with any person's efforts to provide plaintiff with treatment after December 1, 2011. Defendants were not deliberately indifferent to plaintiff's medical needs, did not delay his treatment, and did not interfere with anyone efforts to provide plaintiff with treatment. Therefore, defendants' motions for summary judgment will be granted.

B. <u>Negligence Claim</u>

Lastly, because plaintiff's § 1983 claims over which this Court otherwise would have original jurisdiction are subject to dismissal, as discussed above, there is no good cause or sound reason to exercise supplemental or pendent jurisdiction over the tort claim he asserts.[2] 28 U.S.C. § 1367(c)(3) (The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); <u>White v. Amman's, Inc.</u>, 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendent jurisdiction were properly dismissed.") Because subject matter jurisdiction over plaintiff's tort claim does not exist, it will be dismissed pursuant to Fed. R. Civ. P. 12(h)(3).[3]

---

[2] Even if plaintiff's allegations were broadly construed as a failure to protect/endangerment claim, his allegations are insufficient to state claim upon which relief can be granted. To establish a § 1983 claim for failure to protect, a plaintiff must show: (1) "serious or significant physical or emotional injury," <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003); and (2) that the official had a "sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (internal quotation marks omitted); <u>Odom v. Dep't of Corr.</u>, 349 F.3d 765, 770 (4th Cir. 2003). Assuming <u>arguendo</u> that plaintiff's medical condition was sufficiently serious, plaintiff does not allege that the officer intentionally harmed plaintiff.

[3] In light of plaintiff's <u>pro se</u> status, the Court notes that nothing in this Memorandum Opinion would preclude plaintiff from seeking relief for the harm he asserts in a state tort action, should he desire to do so.

C. Qualified Immunity

Because the Court has made a determination on the merits of plaintiff's claims, a discussion as to defendants' qualified immunity arguments is not necessary.

## IV. Other Pending Motions

Also before the Court are a Motion to Authorize Service of Summons and Complaint and a Motion to Compel Answer, which plaintiff filed on September 11, 2012. Because defendants were subsequently served and answered the complaint, these motions will be denied as moot.

## V. Conclusion

For the above-stated reasons, defendants' motions for summary judgment will be granted. An appropriate Order shall issue.

Entered this 5th day of February 2013.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia